to the Sixth Circuit. Clerk may call the first case. Case number is 1852 58 and 1852 98. Jesse Pierce et al versus Wyndham Vacation Resorts Incorporated et al. Or argument not to exceed 15 minutes per side. Mr. Nagel for the appellant. Thank you. Good morning. May it please the court. My name is David Nagel of the Richmond Virginia Bar. I'm with the firm of Jackson Lewis and I'm on behalf of Wyndham Vacation Resorts. Because of the limited time, if the court would like me to go through the facts and the proceedings below, I'll be happy to do it. And I'm otherwise happy to jump right in. Jump right in. Thank you. The magistrate's findings here cannot stand as the law of the circuit. He had concluded that the sales representatives in this case were representative of the non-testifying sales reps, that their testimony was sufficient to show the extent and amount of uncompensated hours, that the small hand-picked sample of witnesses was sufficiently representative to show class-wide liability and damages despite the absence of expert evidence or any other testimony that addressed the contention that the sample was question as to whether it was reliable and representative. The magistrate declared that it was his prerogative whether there is sufficient evidence in the record to support a conclusion that it can be applied to the collective action as a decision reserved for the undersigned. We would respectfully... Out of curiosity, just one historical question. Was there ever discussion about doing this collectively in terms of damages? Was that topic ever broached below? No. Not to my knowledge, Your Honor. And certainly not part of the record that it was separated. My intuition with the case is it would make some sense to have done that for liability, but I certainly see the problems that arose by doing it for damages. Yes, Your Honor. I understood and I recognize that the question of liability is very different from the issue that really arose here about the multiple ways in which the claims were advanced by various plaintiffs as to the way in which they had been directed to have some off-the-clock work, if you will. Multiple theories that were advanced from individuals that had asserted... Let's talk about damages. Why did you have an expert who used the records to put together the expert testimony? That's a real head-scratcher to me. Well, certainly, Your Honor... It seems like one doesn't have to be much of an expert, from my perspective, to have poked holes in representative testimony for damages. That seems like someone with a knowledge of seventh grade math would have been able to do it. And yet, paying somebody all this money and using records that it's quite clear should not have been used. Well, Your Honor, I think that the magistrate judge's opinion focused upon that part of the expert's report and said... Right. That's called low-hanging fruit. I would have done the same thing. Yes, Your Honor. I acknowledge that and that he found that it was not persuasive on that point. In his ruling, he didn't pay any attention to either or did not address either the testimony or the parts of the report that we would contend are the most relevant for purposes of this appeal. And that was his emphasis, that the plaintiff's class, the selection of witnesses, was not representative. It was subject to selection bias in that there was no indication of a way that the witnesses were being selected. While it started with the idea of a representative group, ultimately, they selected roughly 20 out of the 20 to 25 of the people who had been in the original group. Was your client at that point prohibited from saying, well, we want to add another 10? These were the plaintiff's witnesses that had been selected. I get it. I get the point. I'm sorry. I get your point. I'm wondering if you get mine. In other words, they non-randomly select 20 or so out of the 46. Why weren't you allowed to say, well, wait, let's even this out. How about these seven or eight other people who had a much lower number of hours? Certainly, the defendant had the ability to call those witnesses on its own. We're talking, Your Honor, and what I'm trying to focus on is the plaintiff's obligation to put on the case to demonstrate representative testimony and the value of the representative evidence. It's certainly not incumbent upon us. The reason I started with the liability damages dichotomy is it seems to me if you have liability, the plaintiffs have a little more flexibility from Mount Clemens on when it comes to proving the amount of damages. It doesn't mean they get to do anything. I get it. There's something to your brief on this point, but they do have more flexibility. It's just strange for me. Mount Clemens has this whole concept that says, well, the employer doesn't have reliable objective hour reporting, which is the problem here, then they put their evidence on and you respond. You can respond with an expert who uses useful information, or I suppose you could respond by saying, why don't we include these other plaintiffs in the quote random sample? I just don't understand what you guys were doing. Your Honor, I think the fairest way to say it is that we had taken throughout this litigation the position that it was not subject to representative evidence. There was such a wide range, not only of the different mechanisms by which the plaintiffs claimed there had been a variance, but witnesses varied as much as 30 hours a week, every week over a three-year period, so there's an enormous difference between those who are claiming that they worked 80 hours every week for three years versus those in the plaintiff's group who said 50 hours. I get the point, and one way to think about it is that you were being very principled in the sense that you were saying you can't do any representative testimony, we're just going to hold that line, but what I don't quite get is why you couldn't have said in the alternative, we still think you can't allow any representative testimony, at least on damages, but at a minimum, if we're going to use these representative witnesses, you need to add these others, because those were high ball estimates, and here are some people that are on the low ball side, and that will make it more fair. It's the second part I don't understand. It's called arguing in the alternative. It's not conceding the point, it's just saying we're stuck with a magistrate ruling against us on this recertification. That was a ruling that was four days before trial commenced. It was after discovery, but just before trial, that's the same time at which, I think ironically, it was just two days away from the time at which the judge disqualified the plaintiff's expert. So to the extent that they had intended to have their case include expert testimony as to the selection of the estimates on time, the judge granted the motion to strike that expert and preclude any of his expert testimony during the trial. What's your main complaint about how this case was tried? Is it that they should have put on everybody who worked there, and so you can make an accurate statement, or representation is not an appropriate way of proceeding, or what? Our main argument, Your Honor, would be that the class should not have been certified and should have been decertified because of the wide range, the three different classes of sales representatives, seven different theories that they asserted that various individuals had, they claimed, been subjected to, to lead to a very wide variance in hours. The fact that there was a very wide variance in earnings on the value of time that individuals had. So it's primarily, I think, Your Honor, on the certification. Because absent the certification, it would have been a case about the testifying witnesses. That's why, quite frankly, our suggestion for remedy would be to remand the case with instructions to decertify, and for the court, although now the magistrate has retired, but for the court. One at a time, is that what you're saying? Well, if it's remanded, that's what you want, is each one have number one first day, and number two the second day, and number three. How many total employees were involved here? 156, Your Honor. So you want 156 times whatever time it takes. In theory, we would take that position that there are individual defenses that should be presented, which we don't have the opportunity to present in this action. As a practical matter, if it had been broken into groups that were better groups with greater similarities so that they were similarly situated, it could be done in that way. Was there any effort to do that? Was on a voluntary by agreement basis? I'm sorry. Or did you ask? I know you were already asked whether there was any attempt to separate liability and damages, but did you make any arguments that at least there should be subclasses? She's responding to what you said. You said they might have been able to do it if you'd had different subclasses, and she's saying, did you try to do that? I was responding to Judge Silish on remand as to how it would be addressed. Right, but I was asking, you said at least there should have been, you know, you could have grouped them, and I asked you whether you made any argument or request for subclasses. I did not believe it was really a challenging of the representativeness of the witnesses that we took, and all the way, as I say, until less than a week before trial, that was the argument for decertification that we were advancing. I do think it's somewhat... Well, so I'm not sure I understand the answer now to Judge Silish's question. Do you think if it remanded, it has to be... What should happen on remand? Okay, you're asking for remand. It seems to me it's fair for us to ask what that looks like. Is that 156 liability and damages trials? Is it three subclasses? Is it liability once and then separate damages? You tell us, because it seems to me we're entitled to know what you plan to do if you win. Of course. First, we would ask that it be reversed and remanded with entry of judgment for the defendant, because we believe, using the Mount Clemens analysis, that in fact the plaintiffs did not meet the standard of a just and reasonable inference on it as demonstrated by... I thought Mount Clemens was a damages case. It was, Your Honor, but if... So if there's liability, you wouldn't win as a matter of law. There was evidence of liability. My point, Your Honor, is that the Mount Clemens case was used to establish liability in this case on the argument, and I won't, because of the time, I won't recount all the briefing on that, but the argument was made that there's a just and reasonable inference that comes in Mount Clemens, and yet the district judge, the magistrate, rejected that. I think it's a pretty hard case to say you should win as a matter of law on liability. That seems to me pretty hard. Understood. Let's assume there is some liability. What should this look like on remand if you get what you're asking for? Frankly, it should go back. It should be decertified, and the court should address the liability to the individual testifying plaintiffs, the named plaintiffs in this case, who established from their own testimony and from the other evidence that they presented in support of their claims whatever they had as unworked overtime, as opposed to taking that, reaching some kind of, the plaintiffs took all of those numbers and came up with their 63 hours. I mean, so ultimately, the answer to Judge Siler's question is it really does have to be 156 trials. No, Your Honor. I would submit that while they would be dismissed without prejudice, those who are not the named If every single one of them wanted to pursue it, they would have the ability to file new individual actions, but I, if you're asking what I would request and what I would anticipate, it goes back and we resolve it for those who tried their cases. There were 25 plaintiffs who testified about individual cases. Obviously, the people that were being represented, in other words, the people that didn't testify weren't opposed because they were being represented by others' evidence. They would have a shot on remand to say, at a minimum, to file an affidavit to say, well, here's my claim as to why I worked more than 40 hours. Right. You're just saying, I guess your point is you don't think it gets to 156. No, I don't. I mean, 70 of the plaintiffs in the class, the names were never mentioned in three weeks of trial. This was a case about a much smaller group of individuals. But that's what a representative case is. Of course, of course. They absolutely have the right to pursue it. But I think that the record was that there was such wide variance. There were some, I mean, there were individuals who received under the allocation of the district judge will get a quarter of a million dollars of overtime. There are other people who will get very small amounts because of the very limited testimony. Did it affect us that the magistrate has retired? As a matter of setting the law of this circuit and establishing what is necessary for a representative action to go forward, it should not. I recognize that as a matter of judicial economy, it's going to be more difficult to send it back. And I think, frankly, the magistrate indicated that before trial, that he was not about to retire and leave his colleagues with 150 individual actions. So I think as a practical matter, it did have an impact. It's theoretical, it should not. What would have stopped you from, I mean, you say there are some that worked maybe two hours of overtime. So what would have stopped you from calling those people? And I see that my time has expired, Your Honor. May I address it? Well, I mean, you have the time if you want it. Oh, sure. Go ahead. Do you want to repeat the question? No, no, I understood it. Nothing would have stopped us from doing it. We could have put on individual cases in that. I do think that as Judge Sutton recognized, it was a matter of taking and standing by a principled position throughout that this was not an appropriate case for representative action. And instead of trying to essentially remedy the failure. We conclude that that was an admirable, principled stance, but we don't agree with it. So basically, you lose, right? Across the board because you didn't take these individual. We lose and the court takes a position that representative evidence can be presented without any expert testimony supporting it, without any indication that representative testimony is appropriate despite the wide disparity. I just want to make sure because I want to make sure Judge White's questions. So you say in your briefs, things like how unfair it is, like a due process violation to rely on people who work 30 hours more than 40 as the representative employees. And her question is just such a fair question because you're saying that's very exaggerated. And there's some people who may not even have worked 40 hours. Why would you not put them on and examine them and establish that, gosh, there's not even a violation as to you or if there is a violation, you only worked three hours over 40 in a week. What is the answer to that question? I think that that was essentially a principled and strategic decision as opposed to an effort. I do think that the judge commented a number of times and in his opinion commented a number of times that it was already a long trial. And so while he asserted several times that defendant could have called other witnesses, but didn't, he also... All right. Well, this is already a long opening argument. Thank you. I appreciate it. We'll try to hear from Appelee. You'll get your full rebuttal. May it please the Court. Martin Holmes of the Nashville Bar on behalf of the Appelees and cross appellants. Addressing some of the questions that were raised here, there were no efforts, no suggestions that there would be subclasses. We would say that that would take the position that would have been inappropriate. What do we do with the fact that the ballpark estimate, very pragmatic by the trial judge and good faith and all that. I can certainly understand why he did what he did, but there is no way to justify the 153 hours that you could spend the rest of your life reading the record and you would not come to that number. The 153 average, how he averaged it out. All right. This is part of your complaint. You guys are, everybody's complaining that it's, I mean, the one thing you agree about is that the dollar figure used or the hour figure used is wrong or not supported by the evidence. Correct. So how strange it is for us in this situation to have something that the record does not support. Both of you don't think it supports it. I mean, this just to me, and I must say, put my cards on the table, really shows how crazy it is to be doing representative evidence on damages in this particular case. I mean, this was not donning and doffing where it really is fair to say it takes about three minutes on average to put the clothes on, or it takes about three minutes to get from the restroom to the floor. Those make sense. It makes no sense to do it here where they had so much flexibility in terms of how the, so answer it how you will, but it's, it just seems like a real mess to me. Well, Your Honor, the 52 hours per week does not make sense based on the court's findings and the court in its findings and its 156 page memorandum found the plaintiff's witnesses to be highly credible, found the defendant's witnesses to be not credible, and also found that the time records were grossly inaccurate. It also realized that perhaps the selection of the people that testified were not that random. There was a risk of cherry picking. I mean, obviously plaintiffs are not going to pick the lower estimates, so. Well, in terms of the ... It just doesn't, it really does seem like a due process problem, I must say. Well, it's not a due process problem because there were no limits on the proof at trial. The 47 randomly selected individuals was done originally for discovery purposes after the court, after we had our pre-trial, I mean our initial case management conference, and that was for discovery. Ultimately, the court allowed the defendants to depose all 47 people, and in fact, 52 people allowed the defendants to take whatever discovery they wanted. So, you're making it seem like you can deal with an evidence problem with more process, and to me, the key observation from Tyson's Foods is this is an evidence question, and the evidence question is don't think of it as a multi-plaintiff case. Think of it as a single plaintiff FLSA case. What evidence would be fair to use for the plaintiff in estimating for three years worth of work? That's the way to think about the case, and that's taking that straight out of Tyson's Foods, and what I am having a very hard time understanding is how you can use 20, 30, whatever the number is for the 156 when even the 20 and 30 are all over the map. So, it wouldn't work if you were doing this kind of testimony for one person. How can it possibly work for 156? But Tyson does not abrogate Mount Clemens, and once we showed that the time records were inaccurate, then we could prove the hours worked by just and reasonable inference, and the burden shifted to the defendants to- That's why the similarly situated is so critical. That's what it, you have to, you don't just say similarly situated in the abstract. You have to say similarly situated sufficient that you could do representative testimony that would satisfy the rules of evidence. That's the link that Tyson's Foods, you have to do Mount Clemens with Tyson's Foods. If you do just one, due process problems. You do them together, you avoid the due process problem. Well, they are similarly situated. They all had the same job duties and responsibilities engaged in sales. They had- If you pick the right level of generality. Your level of generality is they were abused in terms of overtime violations. That's your level of generality that makes them similarly situated, and that's not sufficiently similarly situated to allow this kind of evidence in a representative proof context. Well, they were similarly situated in that they were subjected to the same illegal policy of being forced to work off the clock. What's your best case that you're relying upon there to show that the magistrate judge proceeded correctly here? We have Monroe and O'Brien. I think they, both cases, support the way that this was tried. What's your greatest complaint about the way that the judge tried the case? Because you're a cross appellant. We have no complaints about the way the judge tried the case. We just complain about the damages. The 52 hours after going through and saying that the plaintiff's proof was highly credible and that the defendant's proof was not credible, then the court says while the court finds plaintiff have established that they worked overtime, the court finds defendants have somewhat rebutted plaintiff's average, but there's nothing in the record showing that the defendant- Is that the whole January-February issue, which I think the judge found significant? Well, with all due respect to the judge, he was incorrect on that because the averages, estimated averages that the sales representatives testified to took into account January and February. Some of them. I think some of them- And I think most did. For example, there were some of the less productive sales representatives. They did not work in January and February. So those were not included in calculating the average number of hours worked. Some of the higher producing sales representatives, because it was still the slow season, they had to be there. So it all- Then why does it make sense to have this type of representative case for damages? I mean, you have some people who never worked in January and February, and you have others that had plenty of hours all throughout the year. That didn't affect the average number of hours they worked during the recovery period. For example, if they didn't work January and February, when they testified as to the average number of hours they worked per week, they took into account that they weren't there working. We didn't include that in the calculation. The flip side of that, those who worked long hours during January and February took that into account. But the whole idea was that the judge was going to come up with one number, right, that was going to be applied to everybody. So how does that work? I mean, I understand it may even protect the defendant a little, but how do you compensate the class like that? On an estimated average approach, Your Honor, and we disagree. There was not wide variation in the amount of time worked per week. What's the evidence about when the discovery people left work? Where's that evidence? When the discovery people left work? Yes. Like in the morning or when- Left work.  They all testified that they were required to work late because the lower producing- Where is the testimony for that, we'll call it subclass, but there's three different groups of salespeople as to the discovery people. Tell me where in the record, give me a page or something as to when they generally left work. You can't just say they worked over, all right? That's back to your point that your whole generalization is always they worked more than 40 hours a week. That's not helpful. What is the testimony as to that group? There are nine of them, I think, and only one testified as to when they left work. You have the testimony of the one discovery representative plus the testimony of the other sales representatives and their observations that discovery representatives were the last to leave because they would attempt to make a sale- What does the last to leave mean in terms of either backing up 53 hours or 63 hours? What does that mean? There was some variation, but it was generally 5, 6, 7 o'clock at night. Okay, so where am I going to find that? 5, 6, or 7 o'clock at night? I think if you look at the testimony of the discovery representative who testified as well as the other- Which one should we use for this average? Which one? Off the top of my head, I would have to go back and dig through the transcript to see which witnesses testified about discovery- There's only one discovery. There's only one discovery salesperson that was the representative testimony. Well, that's not correct, Your Honor, because we had other plaintiffs who worked in in-house and frontline who testified how discovery worked and how the discovery representatives had to stay there. I think all you said is they left later. So that means all they really are saying is they were still there when they left. That's all that means. That doesn't give us any indication whether they stayed a minute later or two hours later. I'm asking you- So that group can't be helpful. That leaves the one person. What did the one person say? What was this representative testimony on behalf of the nine discovery salespeople as to how late they worked when it comes to the end of the day? What is that generalized off of? It's just a really straightforward question. Yeah, off the top of my head, I don't know exactly what the witness said. I know generally- My understanding is there's nothing on that. But there were other witnesses too, right? Didn't Williamson testify that the discovery representatives had to stay later, close if it fell apart? That just proves they were there when they left, right? Isn't the point that the discovery people stayed later? So all the other witnesses wouldn't tell you when they left. They would just say they were still there. Are we on the same page? Am I missing something? No, no. And I mean, there are variations. How can that help you in terms of calculating a number? Because it all goes at the end of the day. Every witness testified as to the average number of hours they worked per week. So what time they got there and what time they left on a particular day- Didn't matter, did it? It did not matter for our- That's what I thought. That's the way this case was tried. It was just this rough estimate. This is just so astonishing to me. And then the rough estimates become representative testimony for these 130 other people. I think that I go back to that the case was tried without limits. Never was it that we were limited to 47 of the randomly selected people for the initial discovery purposes. And the same thing with the defendants. So I get your point. Your point is they could have brought in the other 130 people. But that doesn't answer the question whether the people that did testify, including this one discovery person, are representative witnesses or representative evidence works. Again, I really think it's an evidence point. But again, I go back to Mount Clemens and the estimated average. Here of the 156 plaintiffs, testimony was presented from 40- What was the Mount Clemens repeated act that led to overtime? I believe it was off the clock. Yeah, got that. What was the common act? In other words, here it's people staying late to close deals. I don't think that was a Donning and Doffing case. How long it takes to get from the put on your clothes to the workplace case? What was the common act that led to the- It was undercounted. I don't recall, Your Honor. But here, the common act is requiring to work off the clock, whether that be telling the sales representatives to make sure that you're not on the clock 40 hours, having the sales reps clock out early, clock in late, not clock in at all. There's not subclasses. It's not like in Monroe where you had a- where Your Honor brought up the issue about a subclass being necessary because one of the ways that off the clock occurred was not necessarily an FLSA violation. Here, these are all ways in which the company accomplished the illegal scheme of working the sales representatives off the clock so they didn't have to pay them overtime. How do you quantify this discovery of people coming in late? How do you add all that up? The way we quantified it at trial was the testimony as to the average number of hours that they worked per week as we did with every witness. So that's how we reconciled the- Nobody said they worked two hours after the rest of them. No, the testimony was that they were required to- They were the last shot where the- If the in-house and frontline sales representatives failed, discovery was the last shot to try to sell them a trial package for Wyndham's timeshares. But the proof we presented, the 44 witnesses of the plaintiffs, that's 28.2% of the class, which is far more than what was upheld in Monroe and we cited in our brief numerous other cases. So with all due respect, our proof on damages was representative of- We presented testimony of 28.2% of the class. We presented documentary evidence on top of that. So when you take all the collective proof, it warrants a 63.66 hours and the judge gave no rationale of how the defendants rebutted the burden after we established the time records were inaccurate. So what if we don't think it should be 63 or whatever yours is? We don't think the 53 can be supported by the record, that that was just pulled out of a hat. What do we do? I think- In other words, I know you didn't get the option you wanted. I'm just making this up, but we don't think the evidence supports 63. We don't think the evidence supports the 53. What do we do at that point? I think the court can make a determination based on the record. So we pick the number? You mean we're finders of fact? I think you could pick the number or you would remand it back with instructions to rule consistently with the record at the district court, but not on liability. That'd be liability. With a new judge. With either a new judge, we've talked that through and unless Judge Shirley's willing to come out of retirement as a special master and reconsider this, then the option would be either the district judge or the new magistrate judge. But that would be on damages only, liability we submit is- Listen, I don't know exactly what we should be doing with this, but I am sympathetic to the point that there sure does seem to be evidence of liability. I agree with that and I'm not that uncomfortable with even doing that on a class-wide basis or collective basis. The damages seem to me a complete mess. I take it there's been no settlement conversations? Well, there have been, not in a while. Have you invoked our person? Paul Calico? I'm not sure. I don't think we did that in this case. He's awfully good. He's really good. I mean, it's up to you, but if I were in your shoes and I'm happy to have us postpone something for a few weeks to let you have that chance, but we're not going to waste our time if you don't want it. So why don't you guys talk about that at some point? I'll tell Mr. Calico we raised this point, but it seems to me worth thinking about. Thank you, Adam. So is it Mr. Nagel? Do you have a rebuttal? Thank you. On the last point you've raised, we would kindly accept an invitation to meet. We'll have Mr. Calico call you both, and it's obviously confidential, and we won't do anything until he tells us to. We don't wait long. Speaking for myself, I'm very impatient. You may have noticed that. I'm noticing it more and more. Yeah, it's a fair criticism. I've heard it from my family more than once, and even a few colleagues. I will respond to the question Judge Seiler asked the opposing counsel. The case we would rely on and think that is most controlling and influential now is the Tyson's Food v. Boifeco. It's a case that really establishes the proper standard on it now and announces it clearly. The Monroe case, with all due respect, is, I would contend, not controlling. Certainly it is controlling law of the circuit, but it is so significantly distinguishable from this case in that there was an agreed upon representative sample in the Monroe case. As we established the last time I was up here, there was never an agreement on a representative pool, and while there have been numerous references to how it started out as a representative pool, it didn't end up that way. The plaintiff's expert was put out. The witnesses were not selected at random by plaintiffs to put on, but they were the ones selected by plaintiffs. It is not as easy to make an argument that there was a representative pool from which the testimony was drawn, as was in the case of Monroe. Do you think that's the significant difference? Yes, sir. Monroe, because opposite side, agreed to the representative. Is that what you're saying? Yes, sir. In the Monroe case, the defendant had agreed. There was some argument in the decision that they may have tried to quibble with it later on, but there had been an agreement by defendant on the representative pool, and there was never such an agreement here, and that was the position that the defendant took throughout, that there couldn't be a representative pool. You had a chance to depose all the people in the plaintiff's class, right? All of them, yes. And you did several? In the sample, not the entire class, but in the sample, the 47 that they started with. And you could have put it on evidence and brought it to the attention of the court, right? Yes. And you did a few, but not many? I can't represent the number, but yes, many of those, and certainly all those who testified. All right. If there aren't any others, thank you for that. Thanks to both of you for your helpful briefs and argument. Thanks for answering our questions. We appreciate it. We'll talk to Mr. Calico, and his services are available as long as you want them. All right, thank you. Thank you.